Clark *v.* Wardwell.

WILLIAM A. CLARK & *als.*, *pet'rs*, *versus* JAMES WARD-WELL & *als.*

The return, upon a warrant calling a town meeting, must show that an " attested" copy thereof was posted up in some public and conspicuous place " in" the town where the meeting was to be held.

If a town " has appointed by vote, in legal meeting, a different mode" of notifying its meetings, it is incumbent upon the party desiring to establish the legality of the meeting, to show it was called in accordance with the mode prescribed by the town.

In a petition for an injunction against town officers, under § 1, c. 239, of the Public Laws of 1864,* an allegation denying the prior legal authority of the town to authorize the issuing of town orders by the selectmen, and the subsequent legislative ratification thereof, puts directly in issue the legality of the town meeting.

Where such petition ran against the selectmen, collector and treasurer, *eo nomine*, and the names of the individuals holding such offices, when the bill was drawn, were inserted in the prayer of the bill as parties respondent, upon whom service was made : — *Held*, that the injunction would not be dissolved as to the particular respondents, although they had ceased to hold the respective offices named.

BILL IN EQUITY brought under the Public Laws of 1864, c. 239, § 1,* by the complainants, " ten taxable inhabitants" of the town of Frankfort, to enjoin the selectmen, collector and treasurer of said town from paying, or receiving in payment of taxes, certain town orders therein mentioned, drawn in pursuance of a vote of the town, to pay bounties to certain persons named.

---

* SECT. 1, c. 239, Public Laws of 1864. When any county, city, town or school district votes to pledge its credit, or to raise by taxation, or to pay from its treasury, any money, for any purpose other than those for which it has the legal right and power, or any agent or officer thereof attempts to pay out the money of such county, city, town or school district, without authority, the Supreme Judicial Court may, upon the suit or petition of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint, hear and determine the same in equity. Any justice of said court may, in term time or vacation, issue injunctions and make such orders and decrees as may be necessary or proper to restrain or prevent any violation or abuse of such legal right or power, until the final determination of the cause by said court.

The bill alleged that, at a meeting of the inhabitants of said town holden March 6, 1865, the warrant calling the meeting contained the following articles :

"Article 29. To see what action the town will take towards raising money to fill the quota of said town, under the call of Dec. 19, 1864, and towards paying" two persons named, who are drafted and accepted under the call of July, 1864.

"Article 30. To see what action the town will take in regard to compensating those who have furnished substitutes for the war," &c.

That the action of the inhabitants of the town upon said articles was as follows :

"Article 29. Voted that the selectmen be authorized and instructed to pay to any person who may volunteer or be drafted, or furnish a. substitute and be mustered into the military or naval service of the United States, under the call of Dec. 19, 1864, the sum of $300, or a town note or order for that sum ; and to" two persons named, " who were drafted and mustered into the service under the July call, $25 per month, so long as they shall remain in the service.

"Article 30. That the selectmen be instructed to draw a town order of $300 for each man who has put in a substitute since the commencement of the rebellion."

The bill further alleged that the selectmen issued under the vote upon Article 29, a town order of $300 to each of fifteen persons named, and to each of the two drafted persons named, two orders, one of $150 and one of $66.

That, under the vote upon Article 30, the selectmen issued an order of $300 to each of twenty persons named.

The bill further alleges that, at a meeting of said inhabitants, held March 5, 1866, the warrant contains the following articles :

" Article 11. To see how much money the town will vote to raise to pay its indebtedness."

That, upon said article, the town " voted to raise $10,000 by assessment, to pay the town's indebtedness ;" that the

money so voted to be raised, was intended for the purpose of paying said orders; that said inhabitants " had no legal right, power or authority, \* \* \* \* by virtue of any article or articles in said first named warrant, to vote to authorize their selectmen to issue any one of such orders;" \* \* that the said inhabitants, at said last named meeting "had no legal right, power or authority to vote to raise any money for the purpose of paying said town orders; and that the action of said inhabitants in all of said premises has not been made valid by any subsequent Act of the inhabitants of this State, or of the Legislature."

The prayer of the bill was that these respondents, named and described as selectmen, collector and treasurer of the town, might be enjoined from taking up any of said orders and issuing others or other orders or notes directly or indirectly in the stead thereof; or from receiving directly or indirectly any or any part of said orders in part or full payment of taxes now due or to become due; and from paying directly or indirectly any money out of the treasury of the town in part or full payment of said orders or interest thereon.

The parties agreed that the articles and votes set out in the bill were correct, and that the respondents, since the commencement of the bill, had ceased to be officers of the town by expiration of their term of office.

The return upon the warrant for the meeting of March 6, 1865, was dated Feb. 25, 1865, wherein the person to whom the warrant was addressed certified that he has notified and warned the inhabitants of said Frankfort, &c., "by posting up two copies of the within in two public and conspicuous places; one at J. Wardwell's store, one at the post office at Frankfort Mills, seven days prior to the time appointed for said meeting." The return upon the warrant for the meeting of March 5, 1866, declared the service to have been made by "posting up two copies of said warrant, one in the post office at Frankfort mills, and one in James Wardwell's store, being public and conspicuous places in said town," &c.

The facts connected with the returns were put in subject to objection, and the respondents to have the benefit of all legal rights in relation to amendment of records and returns.

*T. W. Vose,* for the complainants.

*W. G. Crosby,* for respondents.

1. The prayer of the petition is, that these respondents, described therein as selectmen, treasurer and collector, may be enjoined from paying certain orders, &c. The agreed facts find that these individuals do not now hold those offices.

To enjoin them from doing an act which they have no official authority to do, would be a mere idle form; an injunction on them would have no operation on their successors in office. For aught that appears, their successors may have already paid the orders; or, if not, an injunction made perpetual on these respondents, now that they are out of office, will not enjoin those who now hold the office from acting in the premises.

To compel these respondents to incur the expense of answering to a suit to which they were made parties only by reason of their official capacity, after they have ceased to hold or exercise that capacity, would be inequitable. The injunction, as to them at least, should be dissolved; and they should be indemnified by the petitioners for the costs they have incurred since they ceased to hold office.

The course which petitioners should have adopted when that event occurred is so obvious that I need not indicate it.

2. The petitioners, in their petition, assign certain reasons why the respondents should be enjoined, &c.

Their counsel, in argument, assigns another reason, viz.: that the meetings, at which the votes were passed, were not legally called. This point is not open to them; they must confine themselves to the causes enumerated in their petition. It can be raised only by amending the petition, or complaint, or bill, whichever may be the appropriate style of the process, and the Court will not, at this stage of the

proceedings, permit the amendment. "After the cause is at issue the Court will not give the plaintiff leave to amend, unless he shows, not only the materiality of the proposed alteration, but also that he was not in a condition to have made it earlier." Story's Com. on Eq. Pl., (ed. of 1838,) pp. 268 – 9. "Application for leave to amend must be at the proper stage of the cause; the proper stage is before the cause is at issue; and the cause is properly at issue when the replication is in and the pleadings are closed." Ib. 679, 681. •

But, admitting that petitioners can make the point, it is incumbent on them to show that the meetings were not legally called.

The defects pointed out are in the returns of the warning officers; for aught that appears those meetings were notified in accordance with the vote of the town. R. S., c. 3, § 7. Petitioners do not show that they were not.

If there is any defect in the returns we shall ask for leave to amend them; this right is allowed us by the "agreed facts"; the Court will not, of course, refuse permission.

DICKERSON, J.— This is a process in equity, brought under c. 239, of the laws of 1864, to enjoin the respondents, town officers of Frankfort, from paying or receiving certain town orders, drawn in pursuance of a vote of the town, to pay bounties to the persons therein named.

In the absence of any statutory provision, the towns and cities in this State had no authority to raise money to pay bounties to soldiers; and it is worthy of remark, that the legislation upon this subject, instead of preceding, followed the action of the municipalities, ratifying rather than authorizing their doings in this respect.

The several enactments of the Legislature, legalizing the proceedings of the municipalities, in offering and paying bounties to secure the performance of military service, in the cases specified in those statutes, made them valid in as full and ample a manner as though they had been authoriz-

ed by law;—provided, the meetings at which these proceedings were had, were legally notified and held. *Sanborn* v. *Machiasport*, 53 Maine, 82.

Section 7 of chapter 3, R. S., requires that notice of town meetings shall be given " by posting up an *attested* copy of the warrant in some public and conspicuous place *in said town*, seven days before the meeting, unless the town has appointed, by vote, in legal meeting, a different mode." It has been repeatedly held that a failure to comply with this requirement, in any particular, renders the doings of the meeting void. *State* v. *Williams*, 31 Maine, 231; *Beard* v. *Fossett*, 34 Maine, 575; *Brown* v. *Witham*, 51 Maine, 21; *Sanborn* v. *Machiasport*, 53 Maine, 82.

The return upon the warrant calling the meeting of the 6th of March, 1865, when the bounties in question were voted, recites that service of the warrant was made by "posting up two copies of the warrant in two public and conspicuous places, one at J. Wardwell's store, one at the post office at Frankfort Mills, seven days prior to the time appointed for said meeting." The omission to certify that an *attested* copy of the warrant was posted up, is a fatal defect, if, indeed, this return shows that either of the notices was posted up *within* the town of Frankfort. The return upon the warrant calling the meeting of March 5, 1866, at which the town voted to raise money to pay the bounties in question, is liable to the same objection.

If the respondents would avoid the effect of these objections, it is incumbent upon them to show that these meetings were called in accordance with the mode prescribed by the town, at a legal meeting, or to have the return amended by the warning officer, if he actually posted up an *attested* copy of the warrant as the statute requires. They have not availed themselves of either of these alternatives, though notified that the return is amendable according to the facts.

The learned counsel for the respondents contends that this objection is not open to the petitioners, inasmuch as it is not specifically set forth in their bill. The bill alleges

that the town had no legal right to authorize the selectmen to issue the orders, as voted at the first meeting, and that the Legislature have not ratified its doings. In respect to the second meeting, it is alleged that the town had no legal right, power or authority to vote to raise money to pay these orders, and that its proceedings in this respect had not been ratified by the Legislature. The denial of prior legal authority, and of subsequent legislative ratification, puts directly in issue the legality of both these meetings, as the Legislature has only legalized the "*doings*" of such town meetings as were legally notified and held.

The counsel for the respondents further argues that the injunction should be dissolved as to the particular respondents named in the bill, as the case shows that they had ceased to be town officers, when the facts were agreed upon. The bill is brought against the selectmen, collector and treasurer of the town, whoever they may be. The names of the persons holding these offices, when the bill was drawn, were inserted in the prayer of the bill in order that service might be made upon some tangible persons holding these official relations to the town. The Act of 1864, § 1, gives a single Justice of this Court the right to enjoin the officers of a town, as such, under these circumstances, "until the final determination of the cause by the Court." The case is, in effect, the same as if the bill had been brought against the inhabitants of the town, as it more properly should have been, if the town had not voted to raise the money, nor issued its orders for the payment of the sums voted. Under this state of things, it becoming the business of the selectmen, treasurer and collector to pay, or receive the orders in extinguishment of taxes or other claims against the town, the bill is properly brought against the persons holding these official relations to the town for the time being, both as a warning to them, and a protection to the town. If the temporary injunction is not binding upon the successors of the official persons named in the petition, the latter might keep the case in court until a board should be elected who would

pay the orders; and thus the illegal purpose would be accomplished in spite of the statute specially designed to prevent it. This bill, and the proceedings under it, constitute a contingent limitation upon the powers of the selectmen, collector and treasurer of Frankfort, whoever they may be, until it is disposed of, and they are as much bound to know and respect this process, as they are other requirements of the statutes. The dismissal of parties from a bill in equity, brought against them to restrain them in their official capacity, from carrying into effect the alleged votes of a corporation, and the insertion therein of the names of their successors, at every change made in the election of officers, as ill comports with the dignity of equity proceedings as it does with the furtherance of justice. The principles of equity proceedings do not require courts or parties to keep watch of the election returns for any such purpose. If they did, such watchfulness would scarcely be available, as the new officers might be qualified and carry the illegal doings of the corporation into effect before service of the bill enjoining them could be made. The decision of suits in equity does not depend upon the result of any such trial of speed.

The injunction must be made perpetual, and a decree be framed by the Judge at *Nisi Prius*, in accordance with the principles of this decision.

APPLETON, C. J., CUTTING, KENT, BARROWS and DANFORTH, JJ., concurred.